UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK STEIN,<br><br>                        Plaintiff,<br><br>vs.<br><br>THE CITY OF SAN DIEGO, a municipal corporation, LUISITO FANLO SD7841, an individual, L. PULIDO SD7226, an individual, SAN DIEGO POLICE CHIEF DAVID NISLEIT, an individual, WALLACE SD7739, an individual, STANEK SD7824, an individual, and DOES 1-7, inclusive,<br><br>                        Defendants. | Case No.:  24cv00953 DMS (AHG)<br><br>**ORDER GRANTING DEFENDANT CITY OF SAN DIEGO'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

     This case comes before the Court on Defendant City of San Diego's motion to dismiss pro se Plaintiff Nick Stein's First Amended Complaint ("FAC").  Plaintiff filed an opposition, and Defendant filed a reply.  The matter is fully briefed and submitted.

     Plaintiff, a "Caucasian male[,]" brings eleven claims against the City of San Diego, former San Diego Police Chief Nisleit, San Diego Police Officers Fanlo, Pulido, Wallace, and Stanek, and Does 1 to 7 based on a June 29, 2002 incident in which Plaintiff alleges he was violently assaulted by Mexican gang members (the Doe Defendants) while he was exercising at Mission Beach Park in San Diego.  Plaintiff alleges he ran from the gang and sought assistance from Officer Fanlo, "a Pilipino immigrant[,]" who was patrolling the area.  Instead of assisting, Officer Fanlo "grabbed Plaintiff … shook him violently[,]" and

handcuffed and arrested Plaintiff for "doing flutter kicks" and other "weird" things. (FAC ¶¶ 27 & 28.) Plaintiff claims Officer Fanlo filed a false report stating Plaintiff was the "main aggressor … was on drugs …[and] then tried to stand up … [and] run[,]" and that Officer Fanlo filed the false report because he was "angry" and "bias[ed] about how Plaintiff described his assailants … using the word 'Mexican[.]'" (*Id.* ¶¶ 31 & 40.)

Plaintiff complains Defendant Officers failed to act against Doe Defendant gang members, illegally arrested Plaintiff, and acted with "egregious conflicts of interest and abuse[] of police power[.]" (*Id.* ¶ 1.). Plaintiff further complains that the City has a "de facto policy or custom" of permitting SDPD Officers to "selective[ly] enforce[] the law, … [and] escalate encounters with citizens without cause and abuse [] law enforcement power to further personal interests[;]" that the City has "failed to train, supervise, or discipline SDPD officers regarding the very kind of violations that Plaintiff suffered," and that the City through its official policymakers "made a deliberate choice … to endorse, approve, and ratify Officer Fanlo's unconstitutional conduct." (*Id.* ¶¶ 8-10.)

Plaintiff brings six claims against Defendant Officers under 42 U.S.C. § 1983 for violations of his First Amendment right to petition the government for redress of grievances, retaliation, false arrest, abuse of process, violation of his Fourteenth Amendment right to equal protection, and conspiracy to interfere with his civil rights, respectively. Plaintiff brings three § 1983 "*Monell*" claims against the City—Claims 7, 8 and 9—based on (1) policy or custom, (2) failure to train, supervise, and discipline, and (3) ratification. Plaintiff also brings Claim 10 for intentional infliction of emotional distress against Officer Fanlo and Doe Defendants, and Claim 11 for assault and battery against Doe Defendants only. Before the Court is the City's motion to dismiss the three *Monell* claims.

I.     Legal Standard.

In deciding a motion to dismiss under Federal Rule of Procedure 12(b)(6), the Court is mindful of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), where the Supreme Court established a more stringent standard of

review for 12(b)(6) motions. To survive a motion to dismiss under this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Under these authorities, the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider allegations of the complaint as true, and accept all reasonable inferences—though the Court is "not required to indulge in unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.,* 572 F.3d 677, 681 (9th Cir. 2009) (citation omitted). And while detailed factual allegations are not required under Rule 8(a)(2), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff's claims must contain sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.

II. Analysis.

A. Policy or Custom.

To state a *Monell* claim under § 1983 based on policy or custom, a plaintiff must sufficiently allege "he was deprived of a constitutional right; (2) the [City] had a policy; (3) the policy amounted to deliberate indifference to [the plaintiff's] constitutional rights; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. County of Los Angels,* 977 F.3d 737, 741 (9th Cir. 2020). The plaintiff must show a "direct causal link" between the policy and the constitutional deprivation. *Castro v. County of Los Angeles,* 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc). Liability may arise from an "expressly adopted official policy or a widespread or longstanding practice or custom" that "is so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury." *See* 9th Cir. Civ. Jury Instr. 9.5 (2017). A widespread practice or custom must be so "persistent" that it constitutes a "permanent and well settled city policy" and "constitutes the standard operating procedure of the local governmental entity." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996).

      Here, Plaintiff alleges the City has a "de facto policy or custom" of permitting SDPD officers to "selective[ly] enforce[] the law, … [and] escalate encounters with citizens without cause and abuse [] law enforcement power to further personal interests." (FAC ¶ 8.) Plaintiff argues his *Monell* claims are based in Officer Fanlo's "seizing a crime victim for using the word 'Mexican,' refusing to take his report, and fabricating a false report[,]" and the Officer's conduct was a "predictable result of the City's deliberate indifference to a well-settled custom within … SDPD of tolerating abuse of power, racial bias, and official dishonesty[.]" (Opp'n at 2.) According to Plaintiff, he has alleged a "single, pervasive custom within SDPD: a custom of tolerating and covering up officer misconduct, including abuse of power, racial bias, and the filing of false reports." (*Id.* at 3.) The custom is "demonstrated," says Plaintiff, by a "persistent pattern of violations throughout SDPD" that are detailed in his FAC at Paragraphs 57-65 and through "on-scene actions" of other Defendant Officers (Pulido, Wallace, and Stanek) who "ratified Officer Fanlo's misconduct." (Opp'n at 3.) Officer Pulido was on-scene on June 29, 2022 and "acquiesced" in the alleged constitutional violations of Officer Fanlo; the next day Officer Wallace "participated in the cover-up[;]" and Officer Stanek was present with Officer Wallace and he too "acquiesced in the continued refusal to accept Plaintiff's report or address the prior day's misconduct[.]" (*Id.*) (citing FAC ¶¶ 50, 102, 110).

      However, these allegations are insufficient to state a *Monell* claim based on custom or practice. First, Plaintiff's identification of several incidents involving SDPD fails to allege a specific longstanding custom or practice that demonstrates bias against Caucasian males or racist policing generally, abuse of power, and covering up. Four of the incidents attributed to SDPD appear to *postdate* the events of this case and involve general allegations of excessive force, racist behavior, false reporting and nepotism, and failure to properly investigate a murder case, (FAC ¶¶ 57-60), but it is unclear how those events are relevant to the circumstances of this case and create a longstanding practice that served as the moving force for the alleged misconduct here. Plaintiff also cites a 2018 incident involving a person who died after being restrained, criticism of SDPD for its "handling of

demonstrators" following George Floyd's death in 2020, and efforts by San Diego City Council and the Community Review Board on Police Practices in 2018 and 2020 to implement de-escalation policies. (*Id.* ¶¶ 61-64.) Finally, Plaintiff identifies a 2014 "physical assault" case against a woman by an SDPD officer. However, cobbling together several unrelated incidents that generally involve use of excessive force, false reporting, physical assault, dishonesty, or racial bias by other officers is insufficient to allege a longstanding custom of SDPD "of tolerating abuse of power, racial bias, and official dishonesty," (Opp'n at 2), let alone a moving force for Defendant Officers in this case to engage in such misconduct. Plaintiff's allegations are insufficient to plausibly allege SDPD has a "standard operating procedure" of this scope and sort. *See Trevino,* 99 F.3d at 918.

In addition, Plaintiff's allegations of "on-scene actions" of other Defendant Officers (Pulido, Wallace, and Stanek) who "ratified" Officer Fanlo's misconduct do not advance his claim. Ratification is a separate theory of public entity liability, (*see, infra,* § II. C.), and Officers Pulido, Wallace, and Stanek are not "policymakers" as required for such a claim. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988) (stating whether an official is a policymaker for *Monell* purposes is a question of law for the court to decide). Accordingly, Plaintiff's *Monell* claim based on policy or custom fails.

      B.     <u>Failure to Train, Supervise, and Discipline</u>.

To state a claim for failure to train, supervise, and discipline, the plaintiff must ordinarily show a "pattern of similar constitutional violations by untrained employees" necessary to demonstrate deliberate indifference. *Connick v. Thompson,* 563 U.S. 51, 62 (2011). Typically, "a single instance of unlawful conduct is insufficient" to state a claim under this theory. *Benavidez v. County of San Diego,* 993 F.3d 1134, 1154 (9th Cir. 2021).

Plaintiff argues that while a pattern of similar constitutional violations is ordinarily required, he falls within an exception to the general rule where in "a narrow range of circumstances," a single violation can suffice if the need for training is "so obvious" that the failure to do so amounts to deliberate indifference, citing *Connick,* 563 U.S. at 63-64.

(Opp'n at 4.)  Plaintiff argues "[i]t is 'so obvious' that failing to train officers on their most basic duties—to accept crime reports from victims, to manage their own racial biases, and to understand the absolute prohibition on filing false reports—will lead to constitutional violations." (*Id.*)

In *Flores v. County of Los Angeles,* 758 F.3d 1154, 1159-60 (9th Cir. 2011), where the plaintiff brought a claim for failure to properly train "to ensure that Sheriff's [d]eputies do not sexually assault women that [d]eputies come in contact with" based on a prior sexual assault conviction of a different deputy, the Ninth Circuit affirmed dismissal of the claim:

> Nor does Flores's failure to train claim fall within the 'narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference.'  In *City of Canton,* [489 U.S. 378, 389-90 (1989)], the 'Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force.' … In its hypothetical, the Court 'sought not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations.' … As the Court observed, this hypothetical recognizes that '[t]here is no reason to assume that police academy applicants are familiar with the constitutional constraints of the use of deadly force.' … *There is, however, every reason to assume that police academy applicants are familiar with the criminal prohibition on sexual assault*, as everyone is presumed to know the law. … *There is no basis from which to conclude that the unconstitutional consequences of failing to train police officers not to commit sexual assault are so patently obvious that the County or Baca were deliberately indifferent*.

758 F.3d at 1159-60 (citations omitted) (emphasis added).  As in *Flores,* there is no basis from which to conclude that the alleged unconstitutional consequences of failing to train police officers to accept crime reports from victims, manage their own racial biases, and not file false reports are so patently obvious that the City is deliberately indifferent. "'Where the proper response ... is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or

supervise.'" *Id.* at 1160 (quoting *Walker v. City of New York,* 974 F.2d 293, 299-300 (2d Cir. 1992)). So it is here. Plaintiff's *Monell* claim on this ground therefore fails.

   C. <u>Ratification</u>.

  To allege a *Monell* claim for ratification, the plaintiff must show that authorized policymakers approved a subordinate's decision and the basis for it. *Lytle v. Carl,* 382 F.3d 978, 987 (9th Cir. 2004) (stating the "policymaker must have knowledge of the constitutional violation and actually approve of it.") Plaintiff argues he sent detailed letters to the Mayor and Chief Nisleit "(the final policymakers), providing them with specific evidence of Officer Fanlo's unconstitutional conduct and the falsified report." (Opp'n at 5.) According to Plaintiff, the City neither investigated nor disciplined Officer Fanlo and "instead investigated" Plaintiff, which "constitutes de facto ratification." (*Id.*)

  As the City correctly notes, Plaintiff fails to allege that the Mayor or the Chief "knew of any determination that the officers' actions violated Plaintiff's constitutional rights, what investigation they did of Plaintiff's claims, or that they made a deliberate choice to approve of those actions if they concluded they were unconstitutional." (Mot. at 7.) A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 ratification claim. *Christie v. Iopa,* 176 F.3d 1231, 1239 (9th Cir. 1999) (stating "it is well-settled that a policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval.") (Citation omitted). Plaintiff's ratification claim therefore fails.

   III. <u>Conclusion</u>.

  For these reasons, Defendant's motion to dismiss is granted with leave to amend. Though it is unlikely Plaintiff can plausibly state *Monell* claims, the Court will allow Plaintiff a final attempt to amend his FAC against the City. Plaintiff may file a Second Amended Complaint within 14 days of the filing of this Order.

**SO ORDERED.**

  Dated: January 12, 2026

                  Hon. Dana M. Sabraw
                  United States District Judge