UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICK STEIN,<br><br>                    Plaintiff,<br><br>    v.<br><br>THE CITY OF SAN DIEGO et al.,<br><br>                    Defendants. | Case No.:  24-cv-00953-DMS-AHG<br><br>**ORDER GRANTING<br>THE CITY'S MOTION TO DISMISS<br>WITH PREJUDICE<br>AS TO CAUSES OF ACTION<br>SEVEN, EIGHT, AND NINE** |

Pending before the Court is the City of San Diego's Motion to Dismiss Second Amended Complaint for failure to state a claim ("Motion") and Plaintiff's Motion for Leave to File Third Amended Complaint ("TAC Motion"). (ECF Nos. 23, 26). In response to the Motion, Plaintiff filed a notice of supplemental authority and an opposition, the City filed a reply, and Plaintiff filed a sur-reply. (ECF Nos. 24, 25, 27, 30). In response to the TAC Motion, the City filed an opposition and Plaintiff filed a reply. (ECF Nos. 32, 33). The Court vacated oral argument on both motions. (ECF Nos. 28, 34). For the following reasons, the City's Motion is granted and Plaintiff's TAC Motion is denied.

## I.    BACKGROUND

Plaintiff Nick Stein, proceeding *pro se*, brings various federal and state-law claims against the City, the former San Diego police chief, four police officers, and seven unnamed private individuals ("Doe Defendants"). (SAC, ECF No. 21 ¶¶ 15–21).

24-cv-00953-DMS-AHG

Plaintiff alleges that on June 29, 2022, he was attacked and threatened by Doe Defendants while exercising at Mission Beach Park. (*Id.* ¶ 38). Plaintiff states that he then ran toward a San Diego Police Department ("SDPD") officer, Defendant Luisito Fanlo, for help and reported "that Mexican Gang members had physically attacked him . . . [and] said they [were] going to kill and scalp [him]." (*Id.*). Plaintiff, "a Caucasian male," alleges that Officer Fanlo, "a Filipino immigrant," became angry when Plaintiff described his assailants as Mexican and "became angrier every time Plaintiff used the word 'Mexican.'" (*Id.* ¶ 43). Plaintiff claims that after taking his statements, Officer Fanlo told him to wait, turned to walk away, and then "spun back around . . . [and] lunged at Plaintiff who was seated on the grass." (*Id.* ¶ 39). Plaintiff alleges that "Officer Fanlo grabbed [him] by the arms and yanked him off the ground and shook him violently causing Plaintiff injuries to his shoulder, pain, humiliation, and emotional distress." (*Id.*). Plaintiff states that he was subsequently handcuffed and placed in the back of a police car. (*Id.* ¶ 40). When Plaintiff asked why he was being detained, Officer Fanlo allegedly replied "For doing flutter kicks and that's weird." (*Id.*). Plaintiff alleges that in a subsequent police report, Officer Fanlo mischaracterized him as "the main aggressor" who "was on drugs." (*Id.* ¶ 48). After his arrest, Plaintiff filed a complaint with the SDPD Internal Affairs Unit, although the allegations were later dismissed as unfounded. (*Id.* ¶¶ 33–34).

On May 31, 2024, Plaintiff initiated this action, moved to proceed *in forma pauperis* ("*IFP*"), and requested appointment of counsel. (ECF Nos. 1, 2, 3). The Court granted his *IFP* motion but dismissed the Complaint for failure to state a claim. (ECF No. 4). Plaintiff subsequently filed a First Amended Complaint ("FAC") and *IFP* status was again granted. (ECF Nos. 5, 6). Plaintiff once more requested appointment of counsel but the motion was later denied. (ECF Nos. 14, 19). On August 14, 2025, the City moved to dismiss the three *Monell* claims brought against it. (ECF No. 15; *see* ECF Nos. 16, 17); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). After full briefing, the Court granted the City's motion, finding Plaintiff had failed to plausibly allege the claims. (ECF No. 20). The Court gave Plaintiff fourteen days to file "a final attempt to amend his [complaint] against the City."

24-cv-00953-DMS-AHG

(*Id.* at 7).  On January 26, 2026, Plaintiff filed a Second Amended Complaint ("SAC") which contained new allegations about a 2018 interaction with the SDPD that had been the subject of a prior lawsuit.  (SAC ¶¶ 26–30, 151).[1]  The City then filed the present Motion, arguing that the SAC is "largely the same" as the FAC and similarly fails to state a claim, despite any new factual allegations.  (ECF No. 23; *see* ECF Nos. 24, 25, 27, 30).  In response to the City's argument that two incidents do not amount to a *Monell* policy or custom, Plaintiff filed a notice of supplemental authority with facts about a 2015 interaction with the Oceanside Police Department.  (ECF No. 24).  It is these allegations that Plaintiff seeks to add in a third amended complaint.  (ECF No. 26; *see* ECF Nos. 32, 33).  However, establishing "municipal liability under *Monell*" requires showing that "*the municipality* had a policy."  *Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) (emphasis added).  As the Oceanside Police Department is an entirely different "local government entity," allegations against it cannot be used to show a policy or custom on behalf of the SDPD.  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  Accordingly, Plaintiff's TAC Motion is denied for futility.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (listing futility and the repeated failure to cure deficiencies among the reasons a court may deny leave to amend).  The Court now turns to the City's Motion.

## II.    LEGAL STANDARD

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss on the grounds that a complaint fails to state a claim upon which relief can be granted.  "A Rule 12(b)(6) motion tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  "To survive a motion to dismiss, a complaint must contain sufficient

---

[1] Plaintiff alleges that on March 15, 2018, he "was lawfully present in a public space" when he was approached by two SDPD officers "without probable cause or reasonable suspicion."  (SAC ¶ 27).  According to Plaintiff, "[t]he officers forcibly arrested [him]," used "a full-body restraint device" on him, and subsequently "filed a police report containing demonstrably false statements."  (*Id.* ¶ 28).  Plaintiff states that he filed a formal complaint and the SDPD Internal Affairs Unit later determined the allegations to be unfounded.  (*Id.* ¶¶ 29–30).

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the plaintiff has not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570. Additionally, *pro se* filings are construed "liberally [] to afford the [plaintiff] the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation modified).

### III.    DISCUSSION

#### A. Policy or Custom

Plaintiff's seventh cause of action is a *Monell* claim alleging that the City "maintained a policy or custom of permitting, condoning, encouraging, or covering up police officer's selective enforcement of the law and abuses of law enforcement power." (SAC ¶ 140). "To establish municipal liability under *Monell*, [Plaintiff] must prove that (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [his] constitutional right; and (4) the policy

24-cv-00953-DMS-AHG

was the moving force behind the constitutional violation." *Lockett*, 977 F.3d at 741. A policy is "a deliberate choice to follow a course of action [] made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). A policy can come in the form of an expressly adopted official policy or a longstanding practice or custom. *Gordon v. County of Orange*, 6 F.4th 961, 973–74 (9th Cir. 2021).

Even assuming a constitutional violation, the SAC does not allege the existence of a relevant official policy, and the City argues that "cobbling together two personal incidents" is insufficient to allege a longstanding custom. (Mot. 6). Plaintiff contends that in light of the 2015 incident, "three incidents spanning eleven years" constitute "a pattern that is more than sufficient to survive a motion to dismiss." (Opp'n 2). However, as previously discussed, the 2015 incident cannot be used to prove a custom on behalf of an entirely different entity. Moreover, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918. Here, two negative interactions with the SDPD are insufficient to show a custom which is "so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Id.* (quoting *Monell*, 436 U.S. at 691); *see Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017) ("[O]ne or two incidents are insufficient to establish a custom or policy . . . ."). Thus, Plaintiff has not moved this claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## B. Failure to Train, Supervise, and Discipline

Plaintiff's eighth cause of action is a *Monell* claim alleging that the City "failed to enact any effective policies or procedures to train officers against filing false reports, to supervise officers in their interactions with crime victims, or to discipline officers who engage in such misconduct." (SAC ¶ 152). "To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional

rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1153–54 (9th Cir. 2021). "Deliberate indifference is a high legal standard, 'requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Perez v. City of Fresno*, 98 F.4th 919, 931 (9th Cir. 2024) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Ordinarily, this requires "[a] pattern of similar constitutional violations by untrained employees," however "single-incident liability may exist in the rare case where the unconstitutional consequences of failing to train are patently obvious." *Connick*, 563 U.S. at 62; *Perez*, 98 F.4th at 931 (citation modified). Here, Plaintiff argues that with the addition of the 2018 incident, he has alleged "a pattern of similar constitutional violations involving false reports and abuse of power." (SAC ¶ 153). However, despite Plaintiff's characterization of the incidents as "an identical pattern of misconduct perpetrated against [him]," there are significant differences between the two incidents. (*Compare* SAC ¶¶ 26–30 (describing 2018 arrest and use of force with full-body restraint device), *with* SAC ¶¶ 31–36 (describing 2022 refusal to take crime report and subsequent characterization of Plaintiff as "main aggressor")). These two incidents are not similar enough to put the City on notice "that specific training was necessary to avoid this constitutional violation." *Connick*, 563 U.S. at 62–63. Furthermore, as discussed in the Court's previous order, the single-incident exception does not apply here. This is because despite Plaintiff's argument that the City failed to train officers not to file false reports and to interact appropriately with crime victims, "the proper response is obvious to all without training or supervision." *Flores v. County of Los Angeles*, 758 F.3d 1154, 1160 (9th Cir. 2014) (citation modified). For these reasons, Plaintiff has not plausibly alleged a failure to train, supervise, or discipline claim.

### C. Ratification

Plaintiff's ninth cause of action is a *Monell* claim alleging that the City "squarely ratified the unconstitutional conduct that occurred by SDPD officers on June 29, 2022." (SAC ¶ 90). A municipality "may be held liable under Section 1983 when . . . an official

24-cv-00953-DMS-AHG

with final policy-making authority" who had "knowledge of the constitutional violation" makes a "conscious, affirmative choice" to approve of it. *Gordon*, 6 F.4th at 974 (citation modified); *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004); *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992). Plaintiff alleges that in 2022, he sent letters describing Officer Fanlo's conduct to the Mayor, Chief of Police, and an SDPD Internal Affairs Unit officer, but that the "City made no effort to implement any sort of corrective actions to prevent similar incidents of misconduct in the future." (SAC ¶¶ 84, 89). Even assuming the Mayor and Chief of Police received the letters and knew of the alleged constitutional violation, Plaintiff does not plausibly allege that they made an affirmative decision to approve of Officer Fanlo's conduct. *See Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) ("[A] policymaker's mere refusal to overrule a subordinate's completed act does not constitute approval."); *see also Dodge v. Evergreen Sch. Dist. #114*, 56 F.4th 767, 788 (9th Cir. 2022) ("A mere failure to discipline does not amount to ratification of allegedly unconstitutional actions." (citation modified)). Furthermore, the letter to an Internal Affairs Unit officer cannot support ratification because "there is no support for the view that an entire organization . . . or a unit within an organization—such as Internal Affairs—can constitute an official with final policymaking authority." *Williams v. City of Los Angeles*, No. 2:20-cv-06961-MEMF-AFMx, 2023 WL 3317064, at *16 (C.D. Cal. Mar. 7, 2023). Finally, the closing of an Internal Affairs Unit investigation does not support the inference of ratification. *Garza v. City of Los Angeles*, No. 19-55952, 2021 WL 3140574, at *1 n.2 (9th Cir. July 26, 2021) (noting that ratification does not occur "anytime a letter summarizing an internal affairs report exonerating an officer is mailed on official letterhead"). Therefore, Plaintiff has not plausibly alleged a *Monell* claim under the theory of ratification.

## IV.    CONCLUSION AND ORDER

"Courts should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Spencer v. City of San Diego*, No. 23-cv-771-GPC-BLM, 2023 WL 7555311, at *3 (S.D.

24-cv-00953-DMS-AHG

Cal. Nov. 14, 2023) (citation modified); Fed. R. Civ. P. 15(a) (courts should "freely give leave [to amend] when justice so requires"). Here, Plaintiff has amended his Complaint multiple times and it is clear the deficiencies cannot be cured. Therefore, the Court **GRANTS** the City's Motion to Dismiss with prejudice as to causes of action seven, eight, and nine. As previously discussed, the Court **DENIES** Plaintiff's Motion for Leave to File Third Amended Complaint.

     **IT IS SO ORDERED.**

Dated:  June 5, 2026

Hon. Dana M. Sabraw
United States District Judge

8

24-cv-00953-DMS-AHG